GIESSEL (Frank), Plaintiff and Appellant, vs. MUTUAL SERVICE CASUALTY INSURANCE COMPANY and another, Defendants and Respondents: GIESSEL (Daniel), and another, Impleaded Defendants and Respondents.*

*December 2—December 30, 1953.*

* Motion for rehearing denied, with $25 costs, on March 2, 1954.

For the appellant there was a brief and oral argument by *H. E. Koehler* of Shawano.

For the respondents there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Charles F. Smith*.

For the impleaded respondents there was a brief by *Lehner, Lehner & Behling* and *Adolph P. Lehner,* all of Oconto Falls.

BROADFOOT, J. Upon the review of a record following a directed verdict entered upon motion of the defendant, the evidence must be considered in the light most favorable to the plaintiff. Upon this appeal the plaintiff contends there was evidence adduced on his behalf that would permit a jury to find the defendant Dreher causally negligent in respect to the operation of his automobile at the time of the accident as to speed, lookout, proper management and control, and in failing to sound his horn.

Because a new trial is being ordered we do not think it proper to comment at any length upon the evidence. We fail to see that the defendant Dreher was under any duty to sound his horn, but in other respects there is evidence in the record which, if believed by a jury, would warrant findings favorable to the plaintiff.

The defendants contend there is no evidence from which a jury could find that Dreher was causally negligent as to speed or management and control, or because he failed to sound his horn. They admit that upon the record there might have been a question to be submitted to the jury on the negligence of Dreher as to lookout. They contend, however, that the plaintiff was negligent in failing to keep a proper lookout for his own safety and that this was the real cause of the accident.

In addition thereto, the defendants contend that the plaintiff was negligent in stopping his car to the left or north of the center of the highway without leaving an unobstructed width of 15 feet, in violation of sec. 85.19 (1), Stats. The plaintiff counters by citing sec. 85.19 (8), which provides that the first subsection shall not apply to the operator of any vehicle which is disabled to such an extent that it is

impossible to avoid stopping. This presents a jury question, after the jury has been instructed as to the provisions of these sections and the decisions of this court thereunder, most of which are contained in the 1950 edition of Wisconsin Annotations.

The defendants next cite sec. 85.44 (9), Stats., which reads as follows:

"No person shall stand or loiter on any roadway other than in a safety zone if such act interferes with the lawful movement of traffic."

This section was considered in the case of *Carlsen v. Hardware Mut. Casualty Co.* 255 Wis. 407, 39 N. W. (2d) 442. The record does not disclose any violation of this section as a matter of law, and a question thereunder should be submitted to the jury.

The defendants contend that since Dreher could only be found negligent as to lookout, and the real cause of the accident was the failure of lookout on the part of the plaintiff, it was proper for the trial court to compare the negligence of the two and direct the verdict, and that in addition thereto the other negligence of the plaintiff established that the plaintiff was at least equally at fault and the directed verdict was proper.

In its memorandum opinion the trial court said:

"The plaintiff charges the defendant Dreher with negligence in three respects as I recall it, negligence as to speed, as to lookout, and as to control. The defendant charges the plaintiff with contributory causal negligence in several respects. The court is asked to decide whether the negligence of one, if established, is at least equal to the other. I think that we can start out with our consideration of this question with the proposition that there is a possibility of the defendant Dreher being held negligent in some respect and to some extent. I think we can continue with the assumption and concession that the plaintiff, Frank Giessel, was negligent to

some extent. As the court looks at it the negligence of Frank Giessel, consisting in the first place of parking his car concededly on the left side of the highway, or at least obtruding over the center line, occupying himself on a position on the highway to the left of the center line and admittedly making no observation, which, if made, would have showed him his danger, and brought to his attention the approach of the Dreher car, the fact that it was night, that his lights reflected out beyond the highway in front of him, to his knowledge, or at least knowledge he should have had as an experienced driver of a car, these things I think constitute negligence on his part.

"I think that the acts of Giessel set up the scene of this accident. They set up the situation which made it, if not inevitable, at least extremely likely, that a car approaching from the east would put him in grave danger.

"It is argued that the defendant drove blindly through a wall of invisibility, created by the lights showing in his face. It doesn't seem to me that the plaintiff is in much of a position to object to this for the reason that he has set up this situation with knowledge, or at least as an experienced driver. I think the knowledge of the fact that the driver of the approaching cars could not see beyond the glare of the headlights can be presumed to be within his knowledge.

"Nevertheless, he stood behind this wall which he had arranged or set up in a position which would invite danger. As experienced drivers of cars, we all know that when we are approaching a light such as this, whether the lights are tilted up or down, there is a blind spot, and we are temporarily blinded. If when we come to that spot it is our duty to come to a stop, there would arise the practical problem of how we would go beyond that. If we have to stop just within or on the near side of that blind spot, we could sit there for quite a while and unless the car facing us moved, we would continue to be blinded.

"The alternative might be to do as the supreme court once ruled it was the duty of drivers to do at a railroad track; to get out and walk ahead and walk up and down the track to see if a train was approaching. In other words, it might be the duty of the driver approaching the car to get out and walk past that blind spot and see what was there. It would subject

him to the same situation that Frank Giessel might be subjected to and make the situation even worse than it was before, because now the entire roadway would be blocked to approaching traffic from both directions, and a man walking out to see what was in front would be in a poorer position to protect himself. The supreme court has ruled that negligence of this kind and quality cannot properly be compared. It seems to me, however, that in this case the negligence is more or less of the same quality due to the fact that this whole scene, the whole situation, was set up by the plaintiff himself. We have a question of position on the highway, both as to the plaintiff and the defendant. We have no question of speed on the part of the plaintiff, but on the other hand, I think that situation merges into the other, by reason of the self-arranged situation of danger in which the plaintiff found himself."

It is clear that the trial court was under a misapprehension as to the law applicable to a motorist blinded by lights, dust, or dense smoke. Upon the new trial instructions should be given that are consistent with the opinion in *Cook v. Wisconsin Telephone Co.* 263 Wis. 56, 56 N. W. (2d) 494, and cases cited therein.

Too much emphasis was placed on the contention that plaintiff "set up" the scene of the accident. If a jury should find that plaintiff was not negligent as to his position and that of the vehicles upon the highway, then the argument as to "setting up" the scene disappears.

The negligence claimed as to the plaintiff and as to the defendant Dreher differs in kind and quality and, if each is found to be causally negligent, such negligence should be compared by a jury.

*By the Court.*—That part of the judgment appealed from is reversed and cause remanded for a new trial.